13-1199 Pacific Coast Marine v. Malibu Boats 13-1199 Pacific Coast Marine v. Malibu Boats 13-1199 Pacific Coast Marine v. Malibu Boats 13-1119 DARREN SNYDER. Good morning, Your Honors. May it please the Court, I'm Darren Snyder. I represent the defendants Malibu Boats and Trustmark. I'm handling the argument on behalf of all of the defendants and appellees. The public notice function of patents is a bedrock principle of patent law. An essential element of that principle is that an applicant cannot claim subject matter and then abandon it during prosecution and later try to reclaim it during an infringement action. That is precisely what the plaintiff and appellant is trying to do in this case. I'd like to make three points. First, the test for infringement of a design patent includes the notion of equivalence. Starting with Gorham v. White and then in the original patent statute and currently in Section 289, the statute refers to de-patented design or a colorable imitation. Now, it turns out that in design patent cases, very rarely, if ever, do courts have to face the situation of an exact duplicate, the first part of that test, the patented design, because most often accused infringers don't use the exact design. Instead, they use some variation, which was the whole point of the substantial similarity or ordinary observer test that Gorham first articulated. Section 289 incorporates that notion by extending infringement to colorable imitations. But when this court has considered the scope of what does that colorable imitation mean, it is consistently recognized that equivalence, the same notion of doctrine of equivalence found in little infringement, applies in a design patent context. That's found both in the Lee case and also in Minka Leiter. The second point I'd like to make, Your Honors, there is every good reason to apply the same principles of prosecution history estoppel to design patents as there are in utility patents. The same principles that govern the effect of what happens during prosecution should likewise limit the scope of the claim that is ultimately issued. Let's pursue that for a moment. Let's suppose this were a utility patent, and the original claim had said four holes or two holes. And they had amended the claim to only claim the four-hole embodiment. Would a three-hole embodiment have been surrendered by that amendment? That's something that troubles me a little bit. I mean, I agree that if they claimed anywhere between one and four holes and then narrowed it down to four holes, that would be an amendment that would – where the area surrendered would include the three-hole embodiment. But this is a little different in the sense that they claimed four or two and they gave up two, and maybe it's not so easy to determine the scope of what was surrendered. I think that's an essential and important question, Your Honor. So let me say a couple of things about it. First, it would be important to know in your hypothetical why did the applicant make that amendment. Under FESTO, the presence of a narrowing amendment is only the first part of the test. You also have to then ask the second question. Was it to comply with some requirement of the Patent Act? Now, if the amendment in your hypothetical was done for no reason at all or had nothing to do with complying with the requirement of the Patent Act, then FESTO would not apply. If, on the other hand, it was to comply with a restriction – if it was done to comply with the order – I think you're not really addressing my question. I'm asking the utility patent context. Let's assume that this amendment was made to overcome prior art. And the original claim was four or two, and they gave up two. Would three be within the scope of the estoppel? Under FESTO, the court ruled that – or in FESTO, the court ruled that the applicant gives up all of the territory between the original application and the claim as it eventually issues. Now, if the original claim said two or four, I think that would be a very difficult case because the claimant is not claiming three in that instance. Here, however, you have a single claim where the applicant had a design that had no holes, two holes of varying shapes, and four holes. And then abandoned those designs in this application that had no holes or had two holes. And as the district court correctly found, you can look at them and easily see that a three-hole rectangular design is in the territory between a two-hole design with rectangular holes and a design with four circular holes. That's what the judge said? The judge said that it falls within that territory, yes. Well, yeah. I think what I saw the judge saying was that because prosecution history estoppel means you give up all the territory in between your original claim and your issued claim, therefore the three-hole embodiment is in between the two-hole embodiment and the four-hole embodiment. I didn't take the judge to say that the three-hole embodiment is so close to the two-hole embodiment that it's basically the two-hole embodiment that was given up and abandoned. Instead, she was saying to me, to answer Judge Dyke's hypothetical, it sounded like when you cancel, when the claim says four or two holes and you cancel two holes, she would say you've also given up three holes because that's the space in between the two-hole embodiment and the four-hole embodiment that was recited in that claim. I agree with your description of what the district court said. The district court looked at the original application that had the two-hole design, two rectangular holes. It looked at the accused design that has three rectangular holes, and it looked at the issued claim that has four circular holes. Now, keep in mind, and Judge Antone ruled that the three-hole design, three rectangular holes, falls in that territory between what was originally requested and what was ultimately issued. That's correct. And it might be difficult. My problem is I'm not sure that's right in defining the territory that's surrendered because you appear to agree that in a utility context, if you claim four or two, that three wouldn't necessarily be surrendered by amending the claim to eliminate the two. That's the problem, it seems to me. Even accepting all the arguments that prosecution history estoppel apply here and that the restriction requirement resulted in their surrendering these other embodiments to get the patent, I'm still trying to figure out how this case would come out if it were a utility patent claim. So let me make two points, Your Honor. If I could just follow up because I'm having the same concern. The concern I have is that, again, to use a utility patent analogy, it's as if you are reading the claim as if the claim were to say anything two to four-hole embodiment. That's what was the original claim. And then in the face of a prior art or restriction or something else, the applicant amended the claim down to a four-hole embodiment. And then in that context, you would be right to say, oh, you gave up everything in between what was the two to the four. But now going back to Judge Dyke's hypothetical that I can't wait to hear your answer, the claim doesn't say two to four, it says two or four, and then two got canceled. So why did the three-hole embodiment get also surrendered? So let me make two points. First, there was prior art, the Ivy patent, with three rectangular holes before the patent office. We don't know whether that had anything to do with Mr. Bach's decision not to try and claim a three-hole design. But had he tried to claim a three-hole design, there was prior art that precluded that. Second, and I think this is – I'm trying very hard to – There seems to be a different argument that this is barred under an obviousness theory or an anticipation theory or something like that, which is not what the issue is before us. And let me – I want to try and answer your question. I think the difference inheres in the scope of a design patent versus a utility patent. In the context of a utility patent, in your hypothetical, you have – you can have different elements, and each of those elements, using words, can specify them in different ways, two or four. In the design patent context, the patent claims only a design. And the question is, what is the scope of that single design that is being claimed? Now, a patented design can allow for certain variations. And when this patent was originally applied for, it had designs with a hatch and no hatch. It had designs that had no holes in the corner post, two holes of either rectangular or oval shapes in the corner post. And it had designs with four holes in the corner post, some square, some circular. And the patent examiner found that that was at least five different patentably distinct designs. You could not have a design whose penumbra, if you will, or scope of colorable imitations could include all those variations, hatch or no hatch, different numbers, sizes, and shapes of holes. So the examiner required Mr. Bach to limit it to a single one of those five groups. Now, that would be different than the way that you would deal in the utility patent context. So I understand the hypothetical, but I think that the answer in this case lies in the difference between utility patents and the way that they are claimed and the design patent where it has to be limited to a single patentable design. And what the examiner found was that there were five, and in response, Mr. Bach elected one that had four circular holes, and he abandoned and dedicated to the public all of the other designs other than the one that was subsequently pursued in a divisional application. So I guess your argument is that the scope of the literal claim with respect to the four-hole design was broad enough because of the colorable language to bring the three-hole design within that. Absolutely not. I don't believe that. I think if you look at the examiner's office, the restriction requirement, she assumed, we can infer fairly, that a difference in the number of holes was something that created a patentably distinct design. I would not concede that a three-hole design that has different shapes, different sizes, different number of holes from the patented design would fall within the colorable limitations at all. Would you say the same thing about the original two-hole design, that that wasn't broad enough to include the three holes? I don't believe it would. That wasn't an issue that the district court had to address. But no, I don't believe that a design that has a different number of holes, different shapes of holes, different sizes of holes, would fall within the scope of one of the designs as the examiner described them. One thing that I'm puzzled by in this situation is that my understanding of prosecution history is thoughtful. You typically have a claim of broad scope, and then it gets cut back through an amendment, or maybe through argument. And so the scope of that claim has been reduced. Design patents feel a little different, I think, as you were just suggesting, in the sense that if you really have multiple different inventions in a design patent application, you're not looking at a very, very broad drawing and then some smaller, more limited version of that drawing. You're looking at, in this particular instance, a bunch of standalone embodiments that aren't necessarily connected to each other. In fact, they're so unconnected to each other, we're assuming that they're patentably distinct. And then Doctrine of Equivalent Prosecution History is thoughtful. It's about surrendering the territory in between the claim you gave up and the claim that you kept. And I don't know how that works in a design patent context when you have patently distinct embodiments where you cancel one. Do you really give up any and all territory in between that patently distinct invention from the one that you actually patented? That seems to be the crux of your argument, and it's not clear to me how that works when I've never seen a prosecution history thoughtful case work that way. There are typically some large circle and then a smaller, concentric circle, and then the territory in between the two circles is what's been given up. I don't think we have that here. I think the – well, first, FESTA requires and says that prosecution history is thoughtful, applies to that territory between the abandoned claims and the claim that issued. That's the standard that we have to apply. Now, I understand – I believe your point is – I'm not sure that's the right test. I would have thought that what it was saying is that it's – to the extent that you've given up claim scope by the amendment, you can't reclaim it by the doctrine of equivalence. And so you have to find, I think, in order to apply prosecution history, estoppel that the original claim scope covered the equivalent, which is being asserted now. So if we try and take your example, because we have a single design, all we have in front of us, as you point out, are the pictures. And we know that he tried to originally claim a corner post with no holes, some with two holes of varying shapes, some with four holes of varying shapes, some with hatches, some with no hatches. And the examiner correctly found that that has to be limited to a single design. Now, if you were going to translate that into words, I don't know if the applicant would have said a design that has zero, two, or four holes, or if the applicant would have said a design that has zero to four holes. We don't know how that would be done. Now, in the design patent context, it may, in certain circumstances, be extremely difficult to determine where the territory is between the original claim and the claim to issues. But in this context, it happens to be very easy because it's the difference in the number and the shape of the holes. He abandoned a design that had two rectangular holes, and he got a patent on a design that had four circular holes. And it doesn't take a lot to conclude that three rectangular holes is somewhere between two rectangular holes and four circular holes. Now, I agree with you that there may be circumstances where it is difficult to define the differences between an original design application because you're only working with those pictures. But this doesn't seem to be one of those. As Judge Antone recognized, when you line the pictures up, you can see that this one is in between that space. Three rectangular holes is between two rectangular holes and four circular holes. And it doesn't take a great leap to realize that. Okay. Well, I think we're out of time. Thank you, Mr. Snyder. Thank you. Mr. Rowdy, you have two minutes there. A couple of comments, Your Honor. I think the court has hit on the problem with the district court's opinion and defendant's position is if we take the language from Festo literally, then all claim scope is between the two-hole embodiment and the four-hole embodiment. And the four-hole embodiment would be stripped of all colorable imitations. We are not seeking to reclaim through colorable imitations, through the ordinary observer test, what we surrendered in prosecution. Do we have to, in order to apply prosecution history estoppel, do we have to find that the claimed equivalent was within the scope of the original claim? Let me see if I understand the question. In order to apply prosecution history estoppel, does the court have to conclude that the claimed equivalent was within the scope of the original claim? I think that's an issue for the jury. Perhaps, but the question is in instructing the jury or in making the decision, is that a requirement, that the claimed equivalent has to be within the scope of the original claim? Scope meaning colorable imitations? No, the literal scope of the original claim. The surrendered scope, is that what the court's referring to? I'm having trouble understanding the question. Well, it would be within the surrendered scope. It's part of the scope of the original claim that was surrendered. Yes, I guess the court would have to conclude that, yes. And in this instance, I would submit that the scope's not within the scope of the surrendered material. There's not a sufficient record to make that determination. We are not attempting to recover through the ordinary observer test what we surrendered during prosecution. Presumably, the two-hole design would have a range of colorable imitations. The four-hole design would have a range of colorable imitations. They would overlap to a great degree. They're certainly not exclusive of each other. We are simply claiming that we're, and collectively, had Mr. Bach prosecuted a two-hole design, there would be collectively a broader range of colorable imitations. We're simply claiming that we're entitled to the colorable imitations of the four-hole design. So if Malibu came out next month with a two-hole embodiment, you wouldn't file an amended complaint? I'd have to think about it, Your Honor. I think we would still maintain that because it wasn't surrendered for reasons of patentability. But assuming that this court determined that it was, I don't think we would. Are the holes in the hatch functional? Sorry to come out of left field here. The holes in the corner post? Yeah. To some degree, they're functional, but that hasn't been argued in this case. And the hatch is clearly functional? The hatch is functional, yes. Okay, thank you, Mr. Robinson. The case is submitted.